## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LJ NEW HAVEN LLC, d/b/a LENNY & JOE'S FISH TALE, Individually and on Behalf of All Others Similarly Situated, <br><br>       Plaintiff, <br><br> v. <br><br> AMGUARD INSURANCE COMPANY <br><br>       Defendant | No. 3:20-cv-00751 (MPS) |

### RULING ON MOTION TO DISMISS

In March 2020, an executive order issued by Governor Ned Lamont (the "Order") in response to the COVID-19 pandemic mandated that restaurants in Connecticut cease in-person dining operations to help prevent the further spread of the disease. ECF No. 13 ¶ 30. Plaintiff, which operates a restaurant in New Haven, Connecticut, sustained a loss of business as a result, and sought "business interruption" coverage from its insurance provider, AmGUARD Insurance Company ("Defendant"). Defendant denied coverage, and Plaintiff, seeking to represent a class of Defendant's policyholders, brought this action for breach of contract and for a declaratory judgment that Defendant was required to afford coverage under three separate provisions of the policy for revenues Plaintiff lost following the issuance of the Order. Arguing that the policy's virus exclusion forecloses coverage for Plaintiff's losses, and that the terms of the policy's insuring provisions on which Plaintiff relies do not afford such coverage in any event, Defendant now moves to dismiss Plaintiff's claims. Because I agree that the virus exclusion applies, the motion to dismiss is GRANTED.

## I.     FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint, ECF No. 13, and are accepted as true for the purposes of this ruling.  I also consider the insurance policy, on which the Amended Complaint relies, and the Order, on which it also relies and which is in any event judicially noticeable.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (On a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks and citations omitted); *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (On Rule 12(b)(6) motion, "the court may also consider matters of which judicial notice may be taken" (internal quotation marks omitted)); *Frith v. Hill*, No. 07-cv-5899, 2009 WL 3073716, at *16 n. 10 (S.D.N.Y. Sept. 23, 2009) ("[J]udicial notice may be taken of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority.").

### A.    Factual Allegations in the Amended Complaint

Plaintiff is a Connecticut limited liability company that operates the Lenny & Joe's Fish Tale restaurants, which were forced to cease indoor-dining operations in March 2020 when the Governor of Connecticut issued Executive Order No. 7D ("Order"). ECF No. 13 ¶¶ 14, 15.[1]  The Order "confirmed [the] spread in Connecticut" of the "coronavirus disease 2019 (COVID-19) … a respiratory disease that spreads easily from person to person and may result in serious illness or death…." ECF No. 14-6 at 2.  The initial cluster of COVID-19 patients "was found to be linked

---

[1] The Amended Complaint refers to "Closure Orders" generally, and at one point refers to the impact of Closure Orders in New Jersey, rather than Connecticut, in what is presumably a typo. ECF No. 13 ¶ 31, 46.  In the briefing, however, Plaintiff confirms that it was Governor Lamont's Order 7D that led its business to shut down indoor dining. ECF No. 18 at 6.

to the Huanan seafood market in Wuhan, China, where many non-aquatic animals such as birds were also on sale." ECF No. 13 ¶ 19.  On January 13, 2020, "[t]he first confirmed case of the virus outside China was diagnosed" in Bangkok, Thailand, and by "April 23, 2020, the [World Health Organization] reported a confirmed 2.5 million cases of COVID-19 globally and over 170,000 deaths, with the United States dealing with more than 800,000 confirmed cases and 40,000 deaths – more than any other country." *Id.* ¶¶ 19, 21.  "Data from published studies" have shown that "COVID-19  is primarily transmitted from symptomatic people to others who are in close contact through respiratory droplets, by direct contact with infected persons, or by contact with contaminated objects and surfaces." *Id.* ¶ 23.  Specifically, a study "in *The New England Journal of Medicine*," showed that "COVID-19 was detectable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel.  All of these materials are used in the preparation and service of food by restaurants." *Id.* ¶ 26 (footnote omitted).

Risk of exposure "is particularly acute in places the public gathers typically to socialize, eat, drink, shop, be entertained, and go for recreation." *Id.* ¶ 30.  In order to "to slow transmission of the virus" and "mitigate the spread of COVID-19 infections throughout the state and region," the Governor issued the Order, which limited the size of gatherings, closed betting facilities, and placed restrictions on establishments including, but not limited to, restaurants, gyms, and movie theaters. ECF No. 14-6 at 3-4.  Restaurants, the Order provided, "shall only serve food or non-alcoholic beverages for off-premises consumption."  The requirement that restaurants cease operations for in-person dining, limiting them to "take-out and delivery," prevented Plaintiff from being able "to use [its] property for its intended purpose." *Id.* at 3, ECF No. 13 ¶¶ 31, 41.  Plaintiff does not allege that its property was actually contaminated by the

virus that causes COVID-19 and in its brief specifically disavows any notion of such contamination. ECF No. 18 at 9-10 ("Here, there has been no infestation or contamination of Fish Tale's property by coronavirus, nor are there any allegations in the Amended Complaint that would support such an assumption.  Fish Tale's loss was not caused by [a]n infestation or contamination of coronavirus, or any other virus, at Fish Tale's property.").

Plaintiff's commercial insurance policy with Defendant provided coverage "for the policy period of September 4, 2019, through September 4, 2020." *Id.* ¶ 17.  "Among the coverages provided by the [p]olicy [are] business interruption insurance," coverage for "extra expense," and coverage for certain losses resulting from the exercise of "civil authority." *Id.* ¶¶ 34, 37, 39. The policy covers "loss or damage to the covered premises resulting from all risks other than those expressly excluded." *Id.* ¶ 32.  The policy "contains an exclusion for losses caused by [a]ny virus." *Id.* ¶ 43.  Defendant "does not intend to cover losses caused by the Closure Orders as part of business interruption coverage" and has "denied similar claims by other class members across-the-board…." *Id.* ¶ 47.  As a result, Plaintiff seeks a

> declaratory judgment that affirms that the COVID-19 pandemic and the corresponding response by civil authorities to stop the spread of the outbreak triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations, and finds that Defendants are liable for the losses suffered by policyholders.

*Id.* ¶ 9.  Specifically, Plaintiff seeks a declaratory judgment as to three types of coverage in the policy: (1) Business Income Coverage (Count One); (2) Civil Authority Coverage (Count Three); and (3) Extra Expense Coverage (Count Five). *Id.* at 21, 24, 26.

Plaintiff also claims that Defendant has breached its contractual obligation under the policy  to indemnify "Plaintiff and others similarly situated for business losses and extra expenses resulting from actions taken by civil authorities to stop the human to human and

surface to human spread of the COVID-19 outbreak." *Id.* ¶ 10.  Plaintiff thus asserts three breach of contract claims that parallel its declaratory judgment claims: (1) Business Income Coverage (Count Two); (2) Civil Authority Coverage (Count Four); and (3) Extra Expense Coverage (Count Six). *Id.* at 22, 25, 27.

>    **B.**    **The Policy**

The policy, entitled "Businessowner's Coverage Form" and attached to the defendant's brief, opens, under "Section I – Property," with the following sentence: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." ECF No. 14-2 at 7.  "Covered Property" includes buildings, fixtures, and "Business Personal Property," among others, and "Business Personal Property" includes "[p]roperty you own that is used in your business," among others. *Id.*  The "premises described in the Declarations" refers to designated buildings in New Haven listed on the declarations pages, which also specify coverage limits for "business personal property," "equipment breakdown," "valuable papers and records," and "accounts receivable," among others. *Id.* at 59-65.  Under "Covered Causes of Loss," the policy states "[r]isks of physical loss unless the loss is: a. Excluded in Paragraph B. Exclusions in Section I; or b. Limited in Paragraph 4. Limitations in Section I."

Under "Additional Coverages," the policy provides coverage for "Business Income," as follows:

> f. Business Income
> (1) Business Income
> (a) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle,

the described premises include the area within 100 feet of the site at which the described premises are located.

ECF No. 14-2 at 11.

Also under "Additional Coverages," the policy covers "Extra Expense" as follows:

g. Extra Expense
(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

*Id.* at 13.

The final "Additional Coverage" at issue in this case is the policy's coverage of loss of

business income and necessary extra expenses caused by action of civil authority as follows:

i.     Civil Authority

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 13-14.

Section I, Paragraph B. – Exclusions, which, as noted, is referred to in the definition of

"Covered Cause of Loss," includes the following language:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
….

6

j. Virus Or Bacteria
(1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*Id.* at 20, 23.

## II.   LEGAL STANDARD

On a motion to dismiss under 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ray v. Watnick*, 688 F. App'x 41, 41 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted)). While the Court must accept as true the factual allegations in the complaint and "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims. . . ." *Scott v. Monroe*, 306 F.Supp.2d 191, 198 (D. Conn. 2004). "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft*, 556 U.S. at 678) (brackets omitted).

## III.   DISCUSSION

Defendant moves to dismiss the entire Amended Complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that: (1) the policy's virus exclusion forecloses coverage because the losses were caused, either directly or indirectly, by the virus; (2) a loss of income or expense caused by the Order does not trigger coverage under the policy because the property did not

7

sustain a "direct physical loss"; and (3) coverage is not triggered under the civil authority

provision because Plaintiff has failed to allege "damage to property." [2] Because I agree with

Defendant's first argument and find that the virus exclusion forecloses all of Plaintiff's claims, I

do not reach Defendant's remaining arguments.

### A.    Policy Interpretation

Under Connecticut law,[3] "construction of a contract of insurance presents a question of

law for the court." *Connecticut Medical Ins. Co. v. Kulikowski*, 942 A.2d 334, 338 (Conn. 2008)

(internal quotation marks and alteration omitted).  "An insurance policy is to be interpreted by

the same general rules that govern the construction of any written contract.  In accordance with

those principles, the determinative question is the intent of the parties, that is, what coverage the

... [insured] expected to receive and what the [insurer] was to provide, as disclosed by the

provisions of the policy.... If the terms of the policy are clear and unambiguous, then the

language, from which the intention of the parties is to be deduced, must be accorded its natural

and ordinary meaning….  When interpreting an insurance policy, [the court] must look at the

contract as a whole, consider all relevant portions together and, if possible, give operative effect

to every provision in order to reach a reasonable overall result." *Id.* (internal citations, quotation

marks, and alterations omitted).  Courts should not "torture words to import ambiguity" when the

ordinary meaning is not ambiguous, and any ambiguity "must emanate from the language used in

---

[2] Amicus, Kaiaffa, LLC d/b/a Chip's Family Restaurant's submitted a brief in opposition to Defendant's motion to dismiss (ECF No. 28) and participated in oral argument before this Court.

[3] I apply Connecticut law because the court is sitting in diversity; both parties cite Connecticut law to support their positions; and neither party has asserted that the law of another jurisdiction applies. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 n. 2 (2d Cir. 2013) ("[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs."). If Connecticut substantive law is "uncertain or ambiguous, the job of the federal court is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity*." Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

the contract rather than from one party's subjective perception of the terms." *Karas v. Liberty Ins. Corp.*, 228 A.3d 1012, 1020 (Conn. 2019).

   **B.    The Virus Exclusion**[4]

Defendant argues that coverage is precluded under the virus exclusion because the exclusion covers any loss "caused directly or indirectly" by a virus. ECF No. 14 at 10.  Policy exclusions are "strictly construed in favor of the insured" and should only be construed against the insured if the court has "a high degree of certainty that the policy language clearly and unambiguously excludes the claim." *Liberty Mut. Ins. Co. v. Lone Star Ind., Inc.*, 967 A.2d 1, 22 (Conn. 2009).[5]  The operative language of the virus exclusion provision states that, "We will not pay for loss or damage caused directly or indirectly by ... any virus ... that induces or is capable of inducing physical distress, illness or disease."  The provision adds that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." ECF No. 14-2 at 20, 23.  When this second sentence is combined with the "direct[] or indirect[]" causation language of the first sentence, it makes the causal scope of the virus exclusion broad and suggests that it should apply as long as a virus acts as a link somewhere in the causal chain producing the loss or damage at issue.  That formulation is easily satisfied in this case.

The Amended Complaint describes the issuance of the Order as the immediate cause of Plaintiff's losses.  ECF No. 13 at ¶¶ 3-4 (recognizing need to stop spread of COVID-19, States

_____

[4] Defendant addresses the virus exclusion first in its brief, and I do the same and find that doing so makes it unnecessary to address Defendant's remaining arguments.

[5] The policy in this case incorporates the exclusion by reference in the opening insuring clause of the property coverage section of the policy.  Specifically, as noted above, that clause states that "[w]e will pay for direct physical loss of or damage to Covered Property …  caused by or resulting from any Covered Cause of Loss," and "Covered Cause of Loss" is defined to include "[r]isks of physical loss unless the loss is: a. Excluded in Paragraph B. Exclusions …. in Section I;  ECF No. 14-2 at 7-8.  Arguably, then, the exclusion limits the scope of the coverage in the first instance, rather than operating as a traditional exclusion.  I nonetheless treat the virus exclusion as just that – an exclusion – and construe it in accordance with the principles set forth in the text above.

issued orders curtailing operations of non-essential businesses, which incurred catastrophic

losses as a result).  But the complaint traces the Order (and others like it) to the emergence of the

virus and the need to stop its spread.  *See id.* at ¶¶ 1-4 (after the WHO declared the COVID-19

outbreak a worldwide pandemic and the CDC advised the adoption of social social-distancing

measures to stop the spread of COVID-19, "many state government administrations …

recognized the need to take steps to protect the health and safety of their residents from human to

human and surface to human spread of COVID-19," and "[a]s a result, many governmental

entities entered civil authority orders suspending or severely curtailing business operations of

non-essential businesses that interact with the public and provide gathering places for the

individuals."); ¶ 30 (because the CDC's "recommendations have proven ineffective to minimize

the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing

many business establishments, including restaurants …."). And the Order itself identifies as its

very rationale COVID-19, the emergency conditions it has caused, and the consequent need to

stop its spread.  The Order states that "COVID-19 is a respiratory disease that spreads easily

from person to person…" and to "reduce spread of COVID-19, the United States Centers for

Disease Control and Prevention and the Connecticut Department of Public Health recommend

implementation of community mitigation strategies to increase containment and to slow

transmission of the virus." ECF No. 14-6 at 2-3.  "Therefore," the Order limits restaurant dining

to off-premise consumption and mandates that in-person dining operations cease. *Id.* at 3.

Plaintiff's allegations and the language of the Order make clear that while the virus may

not be the "direct" cause of the curtailment of Plaintiff's operations and its consequent loss of

income, it is surely an indirect cause.  For starters, it cannot seriously be disputed — and Plaintiff

does not dispute — that the virus is at least a "but for" cause of its loss, i.e., that loss would not

have been occurred had the virus never come into existence or infected human beings.  And even

if the principle of "strictly construing" insurance policy exclusions counsels against reading the

broad causation language in the virus exclusion to embrace every link in the causal chain, no

matter how remote from the loss incurred by the insured (e.g., Plaintiff's decision to establish a

restaurant in the first place), remoteness is not an issue here.  The causal links represented by the

virus and the Order are interlocking – even intertwined.  The language of the Amended

Complaint and the Order quoted above makes clear that it was a short step from the emergence

of the virus to the curtailment of Plaintiff's indoor dining operations.    Further, Connecticut

courts have recognized, and Plaintiff concedes, that the "anti-concurrent causation" clause in the

virus exclusion, i.e., the statement that the exclusion applies "regardless of any other cause or

event that contributes concurrently or in any sequence to the loss," displaces the "efficient

proximate cause" analysis that would ordinarily apply when construing an insurance policy.[6]

ECF No. 18 at 10 *citing Lombardi v. Universal North America Ins. Co.,* 2015 WL 600823, at *3,

13 (Conn. Sp. Ct. Jan. 21, 2015) (upholding validity of anti-concurrent causation  provision,

noting that "the vast majority of states that have considered the matter" have done so, and

explaining that "purposefully seeking to avoid operation of [efficient and proximate cause

analysis by including such a provision] … does not make the [policy] ambiguous."); *see also

N&S Restaurant LLC v. Cumberland Mut. Fire Ins. Co.,* 20-CV-05289, 2020 WL 6501722, at *4

(D.N.J. Nov. 5, 2020) ("Similarly, the plain language of the Virus Exclusion here indicates that

the Policy was drafted to eliminate the efficient proximate cause doctrine. The Policy does not

---

[6] The "efficient proximate cause" rule has been described by one Connecticut trial court as follows: "In the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster. What is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause."  *Sansone v. Nationwide Mut. Fire Ins. Co.*, 770 A.2d 500, 503 (Conn. Sp. Ct. 1999).

provide coverage for losses caused directly or indirectly by a virus, regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  This language demonstrates the parties' intent to contract around the efficient proximate cause doctrine, language which courts have held is enforceable." (internal citation omitted)).  A literal application of the virus exclusion, read as a whole, means that coverage is excluded if the virus is at least one causal factor in any loss.  But even a narrower reading that demanded that the virus be a "significant", "substantial," or "near" indirect cause would be satisfied based on the allegations of the Amended Complaint and the language of the Order.

Plaintiff makes four arguments against application of the virus exclusion.  First, it traces the origins of the virus exclusion to a 2006 endorsement created by the Insurance Services Office ("ISO"), which it attaches to its brief and which, according to Plaintiff, shows that the exclusion was meant to apply only when the virus has entered and contaminated a property. ECF No. 18 at 9.  This document was not mentioned in, attached to, or relied on by the Amended Complaint.  It is, therefore, not a document I may consider on a motion to dismiss under Rule 12(b)(6). *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016).  In any event, the language of the virus exclusion – whatever its origins – includes no suggestion that it is limited to situations in which the virus has contaminated the insured's premises.  The exclusion says simply that, "We will not pay for loss or damage caused directly or indirectly by … [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." ECF No.14-2 at 20, 23.  There is no mention of contamination or any other restriction based on the virus's location.  Other courts reading this language have reached the same conclusion.  *See N&S Restaurant LLC*, 2020 WL 6501722, at *3 (rejecting plaintiff's argument that applicability of virus exclusion turned on whether virus had contaminated the property: "Although costs for

decontamination would certainly be a direct loss caused by the virus, this is not the only possible

loss that would trigger the Virus Exclusion.").

Next, Plaintiff urges me to look beyond the words of the virus exclusion to the context in

which they appear, arguing that that context shows that the virus exclusion was intended to be

limited to situations of onsite contamination.  The entire subsection containing the virus

exclusion states as follows:

> We will not pay for loss or damage caused directly or indirectly by …
>
> j. Virus Or Bacteria
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing
> physical distress, illness or disease.
> (2) However, the exclusion in Paragraph 1 does not apply to loss or damage caused by or
> resulting from "fungi," wet rot, or dry rot.  Such loss or damage is addressed in Exclusion
> i.
> (3) With respect to any loss or damage subject to the exclusion in paragraph 1, such
> exclusion supersedes any exclusion with respect to "pollutants."

ECF No. 14-2 at 20, 23.  This context, Plaintiff argues, shows that the virus exclusion is limited

to onsite contamination, because the other types of exclusions referred to in the same subsection

– fungi, wet rot, dry rot, and pollutants – involve conditions that can only cause damage "via an

infestation on the property."  ECF No. 18 at 9.  I do not find this persuasive.  To begin with, I do

not accept the premise that fungi, wet rot, dry rot, and pollution can only cause an insured loss if

they occur at the insured premises.  If those conditions existed in an adjacent building, for

example, their corrosive effects could so damage that building that it fell onto the insured

premises, thereby causing compensable damage.  While fungi, dry rot, wet rot, and pollution are

undoubtedly more likely to cause a loss when they occur on-premises, there is nothing

intrinsically "onsite" about them.  In addition, the notion invoked by Plaintiff that "words of a

feather flock together", and should be interpreted similarly (ECF No. 18 at 9), is typically

applied to words in a list contained within a single sentence, not words appearing in separate

sentences, set out in separate paragraphs, and separated by the word, "however" – as is the case with "virus, "fungi", "wet rot", and "dry rot" in the language quoted above.  *See Dole v. United Steelworkers of America*, 494 U.S. 26, 36 (1990)("The traditional canon of construction, noscitur a sociis, dictates that words grouped in a list should be given related meaning." (internal quotation marks omitted)).  In any event, "[t]hat a word may be known by the company it keeps is … not an invariable rule, for the word may have a character of its own not to be submerged by its association," and the principle "ha[s] no place … except in the domain of ambiguity."  *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923).  Fungi and viruses are inherently different, take different forms, and behave differently in the environment.  The term "fungi" is defined by the policy as "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or by-products produced or released by fungi." ECF No. 14-2 at 35.  Virus is not defined by the policy but its ordinary meaning is "[a]n infectious, often pathogenic agent or biological entity which is typically smaller than a bacterial, which is able to function only within the living cells of a host animal, plant, or microorganism…." Oxford English Dictionary https://www.oed.com/view/Entry/223861?redirectedFrom=virus#eid (last visited Dec. 15, 2020). A virus requires a host and cannot survive independently whereas a fungus or mold proliferates and produces by-products in its independent physical form.  There is no justification for attributing the same "on the property" requirement to a virus that Plaintiff argues is required for a fungus.  And the terms of the policy reinforce that the two were intended to be treated differently. The virus exclusion states it does "not apply to loss or damage caused by or resulting from 'fungi', wet rot or dry rot.  Such loss or damage is addressed in Exclusion i." ECF No. 14-2 at 23.  The policy clearly distinguishes between fungi and viruses, and I decline to

import into the virus exclusion an "onsite" or "contamination" restriction that appears nowhere in the terms of the policy.

Plaintiff's third argument relies on cases that, according to Plaintiff, stand for the proposition that "[l]osses caused by precautionary measures taken to avoid a peril are not caused by that peril." ECF No. 18 at 10. Under this theory, the virus could not have caused the losses because the Order was issued to prevent the virus from causing any losses. The cases that Plaintiff relies on, however, are distinguishable because the policies in those cases contained limiting language that did not allow for indirect or concurrent causes. For example, in *United Air Lines, Inc. v. Insurance Co. of PA*, 439 F.3d 128 (2d Cir. 2006), the relevant policy language stated that the business interruption coverage "is specifically extended to cover a situation when access to the Insured Locations is prohibited by order of civil authority as a *direct* result of damage to adjacent premises …." *Id*. at 131 (emphasis added). Applying this language, the court found that an airline's losses due to the closure of National Airport following the 9/11 terrorist attack on the Pentagon were not covered, because the closure order "was based on fears of future attacks" and was not a "direct result" of damage at the Pentagon, which the airline contended was "adjacent premises." *Id*. at 134-35. Similarly, in *Newman Myers Kreines Gross Harris P.C. v. Great Northern Ins. Co.*, 17 F. Supp.3d 323 (S.D.N.Y. 2014), the court interpreted a policy that did not include "direct or indirect" or anti-concurrent causation language, and found that a shutdown of the electric grid in anticipation of flooding from Hurricane Sandy meant that the policy's flood exclusion did not apply: "[T]he power outage Newman Myers complains of was not **directly** *caused by* flood, as that term is commonly understood." *Id.* at 333 (boldface added; italics in original). Plaintiff urges me to follow this reasoning here and to find that the Order was based on fear of further spread of the virus through in-person dining at Plaintiff's

restaurant.  But the exclusion in Plaintiff's policy is not limited to circumstances in which the

virus is a "direct" cause of loss; it also includes those in which it is an indirect cause, no matter

the sequence in which it combines with other factors to bring about the loss.  As shown, the

broad language of the virus exclusion easily encompasses the loss in this case.

Other courts that have considered the same "direct or indirect" virus exclusion have reached the

same conclusion. *See N&S Restaurant LLC*, 2020 WL 6501722, at *2-4 (collecting cases)

(Where policy excluded "loss or damage caused directly or indirectly by any Virus or Bacteria,"

"[t]here is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive

Order mandating closure of Plaintiff's restaurant.  Therefore, COVID-19 is still a cause of the

closure because the Virus Exclusion *specifically provides for such indirect causation*.")

(emphasis in original).[7]

        Finally, Plaintiff asserts that it has pled "that the sole cause of its loss was the [Order]

and, at this stage of the litigation, that allegation must be accepted as true, because causation of

loss is generally a question of fact."  ECF No. 18 at 11; *see also* ECF No. 13 (Amended

---

        [7] To date, the parties have cited, either in their briefs or notices of supplemental authority, a total of thirty-five cases addressing the applicability of the virus exclusion to losses associated with the COVID-19 pandemic.  Of these, thirty-two have been decided in favor of the insurer.  The remaining three cases are either distinguishable or include little to no analysis.  *Elegant Massage, LLC v. State Farm Mutual Automobile Ins. Co.*, 2020 WL 7249624 *12-13 (E.D. Va. Dec. 9, 2020) found that the anti-concurrent causation language in the policy "has not been established as the law in this jurisdiction" and interpreted different exclusion language that did not include the "direct[] or indirect[]" causation language present in Plaintiff's policy and, further, required loss as a result of "growth, proliferation, spread or presence" of a virus; the court suggested that this language required "contamination at the Plaintiff's property."  In *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 6:20-cv-01174-ACC-EJK (M.D. Fla. Sept. 24, 2020) the court declined to make a decision on the merits when the "forms [were] not provided in the Policy itself, nor were they provided to the Court.  Without the corresponding forms which are modified by the exclusions, this Court will not make a decision on the merits of the plain language of the Policy to determine whether Plaintiff's losses were covered."  In *Taps & Bourbon on Terrace, LLC v. Underwriters at Lloyds London*, No. 00375, 2020 WL 6380449 (Pa. Ct. C.P. Oct. 26, 2020) the court summarily overruled preliminary objections and stated in a footnote that "[a]t this very early stage, it would be premature for this court [to] resolve the factual determinations put forth by defendant to dismiss plaintiff's claims.  Taking the factual allegations made the plaintiff's complaint as true, as this court must at this time, plaintiff has successfully pled to survive this stage of the proceedings."  I do not find these cases persuasive in light of the weight of authority favoring application of the virus exclusion when courts were presented with similar policy language and analyzed the issue.

Complaint alleging that "the sole cause of … Plaintiffs' … losses[] were the Closure Orders

….").  But I need not accept the truth of conclusory allegations, *Ashcroft*, 556 U.S. at 678, and

the characterization of the Order as the "sole cause" of Plaintiff's losses is a conclusory

allegation.  It is also one belied by the factual allegations of the Amended Complaint. ECF No.

13 at ¶¶ 3-4 (recognizing need to protect against human to human and surface to human spread

of COVID-19, governmental entities entered civil authority orders suspending or severely

curtailing business operations of non-essential businesses that interact with the public and

provide gathering places for the individuals), ¶ 30 (noting that efforts to contain the virus "have

led to civil authorities issuing orders closing many business establishments, including

restaurants").

        I therefore conclude that the virus exclusion applies and precludes coverage.  I also

conclude that it is not necessary to address Defendant's remaining arguments, because the virus

exclusion bars coverage under each of the three provisions as to which Plaintiff seeks a

declaratory judgment in favor of coverage.  Plaintiff's claims for breach of contract also fail

because Defendant has not breached any of these provisions by denying coverage on the basis of

the virus exclusion.

## IV.    CONCLUSION

        For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint, ECF

No. 14, is GRANTED.


IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

December 21, 2020